IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| T.L.E., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 5:24-cv-00334-CHW |
| | : | |
| COMMISSIONER | : | |
| OF SOCIAL SECURITY, | : | Social Security Appeal |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff T.L.E.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. Because there were no errors in how the ALJ considered the medical opinions in Plaintiff's case, and because substantial evidence supports the Commissioner's decision, Plaintiff's case is **AFFIRMED**.

## BACKGROUND

Plaintiff applied for Title II and Title XVI disability benefits on October 12, 2021, alleging disability beginning on February 1, 2020, based on depression, anxiety, and personality disorder. (Exs. 1A-2A). Her date last insured (DLI) was June 30, 2021. (R. 67, 81). After Plaintiff's applications were denied initially and on reconsideration at the state

agency level of review (Exs. 1A-8A), Plaintiff requested further review before an administrative law judge (ALJ). The reviewing ALJ held a hearing on May 15, 2024. (R. 35-66). The ALJ issued an unfavorable opinion on July 9, 2024. (R. 7-27). Plaintiff's request for review of that decision by the Appeals Council was denied on August 6, 2024. (R. 1-6). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

Plaintiff has treated at Southern Behavioral Services since at least 2019. (Exs. 1F, 2F, 8F). In early 2020, Dr. Mallary, a psychiatrist, diagnosed Plaintiff with major depressive disorder and anxiety and prescribed medications such as Cymbalta and Abilify. (R. 436). In July 2020, Plaintiff was diagnosed with Bipolar 2 Disorder. (R. 428, 521). Dr. Mallary continued to monitor Plaintiff's medication and condition nearly monthly until his retirement. *See* (R. 416-417, 532). Dr. Mallary often described Plaintiff's mood as anxious and depressed. *See* (Ex. 1F). Throughout her visits, however, Plaintiff often presented normally in many areas such as attention, speech, and judgment. *See* (*id*).

The record reflects a long-term counseling relationship between Plaintiff and Ms. Thompson, a licensed clinical social worker, with approximately 60 visits in the record. (Exs. 1F, 2F, 8F; R. 545). Early notes reflect that Plaintiff's medications from a prior doctor

were not working well, as she still had low moods and difficulty getting out of bed, but also show that she was now treating with Dr. Mallary. (R. 598, 603, 604). Plaintiff noted her father's mental health decline and the stress she felt as his caregiver. (R. 599, 604). Plaintiff appeared disheveled. (R. 604). Plaintiff's motor activity, attention, affect, speech, and organization of thought were normal. (R. 604-605). She was often open and compliant during her early sessions. *See, e.g.*, (R. 598, 600, 601, 602, 603). She discussed her work history, her anxiety, sleep issues, thought spirals, anger, and stressors and the effects of those things on her ability function. *See, e.g.*, (R. 592, 594, 595, 596, 597).

By February 2021, Plaintiff had lost a job as a school paraprofessional and called Ms. Thompson in between appointments to discuss it. (R. 586). Plaintiff said she had missed 4 days of work and then had been late 5 or 6 times before being terminated. (*Id.*) During the phone call, Plaintiff recalled previous issues with work history, including a hard time managing her anger and dealing with rude customers and managers. (*Id.*) In March 2021, Plaintiff lost her grandmother and was still dealing with having to be a caregiver for her father. (R. 585). Plaintiff continued to experience anger outbursts that Plaintiff recognized were not proportional to the situation. (R. 581). At a November 2021 appointment, Plaintiff reported suicidal ideation and having lost another job due to crying all day. (R. 578).

By early February 2022, Plaintiff reported that a new medication was helping somewhat, as her mood had been better. (R. 576). The situation with Plaintiff's father continued to be a big stressor. (R. 575). After Plaintiff reported increased symptoms in May 2022 (R. 573), Dr. Mallary prescribed Lexapro. (R. 431, 574). By July 2022, Dr.

Mallory added Wellbutrin and told Plaintiff to taper off Lexapro. (R. 570). Plaintiff reported feeling better on Wellbutrin. (R. 569). Plaintiff's relationship with her boyfriend and his young son continued to dominate her complaints at many counseling appointments through late 2022 and into mid-2023. (R. 557-567).

Notes from October 2023 show that Plaintiff was struggling with her father's death and handling his estate, all of which made her anxious that everyone around her might die. (R. 522, 523). In November 2023, Plaintiff reported increased panic attacks since her father's death. (R. 552). Plaintiff continued to have a stressful time navigating her relationship with her boyfriend in December 2023 and up until March 2024. (R. 545-551). She was also reporting increased headaches at the last visit in the record. (R. 545).

In November 2023, Ms. Thompson provided a letter as part of Plaintiff's application. (R. 521). She outlined Plaintiff's history of depression and anxiety and described how those conditions impacted her work history. (*Id*.) Ms. Thompson stated that, in conjunction with Dr. Mallary, was working to find the best medications to manage Plaintiff's ongoing symptoms, including an increase in suicidal thoughts and more frequent breakdowns. (*Id*.) Plaintiff was assessed for hospitalization in July 2022, but there is no suggestion that Plaintiff was hospitalized. (*Id*.) Due to increased symptoms, Ms. Thompson opined that Plaintiff would be unable to maintain work. (*Id*.)

Ms. Thompson also completed a questionnaire regarding Plaintiff's impairments in April 2024. (Ex. 8F, p. 2-4). She assessed Plaintiff with extreme impairment in most of the functioning areas listed on the form. (R. 542-544). According to Ms. Thomspon, Plaintiff's conditions caused moderate limitations on her abilities to recognize hazards and to get

along with co-workers or peers or respond appropriately to supervision. (*Id*.). Ms. Thompson suggested that Plaintiff's condition caused a marked degree of restriction on Plaintiff's activities of daily living, her ability to understand and carry out simple instructions or repetitive tasks, and her ability to make simple work-related decisions. (*Id*.) In the narrative comment section, Ms. Thompson noted that Plaintiff's anxiety and panic attacks severely restricted Plaintiff's daily functions, caused her to leave work, and impacted her personal hygiene. (R. 544).

Following the retirement of Dr. Mallary, Plaintiff visited Dr. Brian Wright at Mercer Medicine to establish care in December 2023. (Ex. 7F; R. 532). Dr. Wright's observations of Plaintiff were in line with her records, and he assessed her with bipolar affective disorder, borderline personality disorder, and generalized anxiety disorder. (R. 532-533). He continued Plaintiff's prescriptions, which included, Trileptal, Wellbutrin, Lithium, Lexapro, and Hydroxyzine as needed. (R. 533-534). At a follow-up appointment in February 2024, Dr. Wright added Buspirone to Plaintiff's medications. (R. 535). Plaintiff also reported increased headaches. (*Id*.) Although she continued to struggle with anxiety, Plaintiff denied any medication side effects. (*Id*.) In March 2024, Plaintiff requested to change the Lithium prescription due developing acne. (R. 538). Otherwise, there were no side effects from her medications. (*Id*.) Dr. Wright discontinued Plaintiff's Lithium medication and added Latuda. (R. 539).

*Consultative Exams*

Plaintiff saw Dr. Arlene Emmons for a comprehensive medical evaluation in August 2013. (Ex. 4F). Plaintiff reported depression, anxiety, and personality disorder. (R. 505).

She denied any current suicidal ideations. (*Id*.) Dr. Emmons found that Plaintiff could dress and feed herself and complete household chores with frequent breaks. (R. 506). Plaintiff was well dressed and spoke with clear speech. (*Id*.) She was alert, oriented, and able to follow simple directions. (R. 507). Dr. Emmons deferred to a behavioral health specialist as to any restrictions Plaintiff's mental health conditions would cause in her ability to work. (R. 508).

In September 2023, Dr. Robbins-Brinson saw Plaintiff for a consultative psychological evaluation. (Ex. 5F). Plaintiff's mother joined her at the session and provided information to Dr. Robbins-Brinson. (R. 515). Plaintiff's function reports and treatment notes from Southern Behavioral Services were also reviewed. (*Id*.) In addition to her psychiatric treatment and counsel, Plaintiff disclosed inpatient psychiatric treatment when she was 17 and 18 for suicidal ideation. (R. 515-516). At the time of the interview, Plaintiff denied any major stress events although having to see Dr. Robbins-Brinson had made Plaintiff anxious. (R. 516).

Dr. Robbins-Brinson found Plaintiff to be a good reporter of her situation. (R. 516-517). Plaintiff was oriented to time, place, and situation, showed a good ability to concentrate, and had good insight and judgment. (R. 517). Plaintiff was able to communicate effectively with Dr. Robbins-Brinson but displayed mild abnormalities, with soft and monotoned speech. (R. 516-517). No behavioral oddities or tics were noted, but Dr. Robbins-Brinson highlighted Plaintiff's odd phrasing or word choice. (*Id*.) Plaintiff had a depressed mood and affect with poor eye contact. (*Id*.) Dr. Robbins-Brinson found Plaintiff to be of average intelligence. (R. 516). Dr. Robbins-Brinson assessed Plaintiff

with major depressive disorder and autism spectrum disorder. (R. 518). She noted that Plaintiff displayed a fair ability to function despite clearly being depressed, anxious, and uncomfortable. (R. 518). While Plaintiff could carry out a simple, detailed, and complex instructions and was not expected to decompensate under stressful conditions, Plaintiff's ability to get along with the public, supervisors, and co-workers was described as poor. (R. 518). Nevertheless, Dr. Robbins-Brinson concluded that Plaintiff's "ability to sustain focused attention would permit the timely completion of assigned tasks and to maintain production norms." (*Id.*).

*Hearing Testimony and Function Reports*

Plaintiff was 23 years old at the time she testified before the ALJ. (R. 39). She lived alone in an apartment her mother had built. (R. 39-40). Plaintiff's mother was helping to support her at the time of the hearing. (R. 44-45). Plaintiff's past work attempts included being a paraprofessional and cashier, and working with her brothers as a painter and babysitter. (R. 40-44, 57-58). She no longer worked due to being tardy and other emotional issues that kept her from her jobs. *See* (*Id.*) Plaintiff also babysat her former boyfriend's young son after school. (R. 49-50).

As part of a normal day, Plaintiff wakes up between noon and three before spending most of the time with her pets and being outside when possible. (R. 45). She mostly eats prepared food instead of cooking meals. (R. 45-46). She tries to help with chores, but her mother mostly helps Plaintiff with these tasks because she has difficulty completing them. (R. 46). Plaintiff reported difficulty with bathing and changing her clothes regularly. (R. 51). When she is able, she spends time with family and friends, which includes taking some

trips. (R. 45, 51-52). Plaintiff once enjoyed going to the gym regularly, but her anxiety has kept her from it, especially since her father, for whom she served as guardian, passed away. (R. 47-49, 60). When asked about her biggest barrier to working, Plaintiff stated that the combined effects of anxiety and depression kept her from functioning at least three, but up to six days, per week. (R. 54, 59-60). Plaintiff credited medication with helping to stabilize her mood but explained that the medication failed to improve her mood. (R. 55). Seeing a therapist also provided some benefit, but Plaintiff had concerns that she would need more specialized care for her personality disorder. (*Id.*) Plaintiff also experienced migraines that would last three to four days at least twice per month. (R. 54-55).

Plaintiff and her mother completed function reports. (Exs. 5E, 6E). Plaintiff's report was largely similar to her hearing testimony. *See* (Ex. 6E). As an example of how easily she becomes overwhelmed, Plaintiff stated that completing the report caused a panic attack. (R. 324). Plaintiff's mother described her anxiety and depression as debilitating. (R. 309). She noted that Plaintiff sleeps excessively and is unable to work, be around friends, or engage in proper hygiene. (R. 310-311, 313, 316). She limited Plaintiff's social activities to only visiting family. (R. 313-314). As recounted by Plaintiff's mother, Plaintiff lacks motivation and will cry when Plaintiff attempts to do activities like housework or go shopping. (R. 312). Plaintiff's mother similarly discounted Plaintiff's ability to handle her finances because Plaintiff's spends irrationally instead of paying bills or saving her money. (R. 312-313). She limited Plaintiff's ability to remember, talk, concentrate, complete tasks, get along with others, and handle stress. (R. 314-315).

## DISABILITY EVALUATION

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2020, the alleged onset date. (R. 12). Plaintiff's date last insured was June 30, 2021. (*Id.*) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: depression disorder, anxiety disorder, and autism. (R. 13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 13-14). Plaintiff was found to have moderate limitations in each of the "paragraph B" factors. (*Id.*) Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could "perform a full range of work at all exertional levels, but [that] she should avoid concentrated exposure to heat, humidity, and hazards. She can perform simple, routine work where duties basically stay the same day to day and contact with the public is occasional." (R. 14).

Based on this RFC, the ALJ found at step four that Plaintiff is not capable of performing any past relevant work. (R. 20). Pursuant to step five, the ALJ determined that there are jobs existing which Plaintiff can perform, such as hand packer, office cleaner, commercial cleaner, and cafeteria attendant. (R. 21). As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 1, 2020, through the date of the decision. (R. 22).

**ANALYSIS**

Plaintiff argues that the ALJ 's decision should be reversed because the ALJ's treatment of Ms. Thompson's opinion is not supported by substantial evidence. (Doc. 13). Although Plaintiff recognizes the current regulations, her argument at times implicates the "treating physician rule" and the case law applying it, which no longer apply. [1] *See* (*Id.*, p. 6-13). Plaintiff's arguments do not support remanding her case to the Commissioner. The ALJ adequately considered Ms. Thompson's opinion, summarized Plaintiff's mental health records, and explained the findings and conclusions based on the entire record. The decision is supported by substantial evidence.

For applications filed on or after March 27, 2017, there is no requirement to give treating physicians deference. *See* 20 C.F.R. §§ 404.1520c and 416.920c. Plaintiff filed her applications for benefits in October 2021. The weight given to all medical opinion evidence – even those opinions from Plaintiff's own treating physicians – is now governed by 20 C.F.R. §§ 404.1520c and 416.920c. Under these regulations, the agency no longer defers or gives any specific evidentiary weight to any medical opinion, even those from a claimant's own medical sources.  20 C.F.R. §§ 404.1520c(a) and 416.920c(a). The decision instead must articulate how persuasive the medical opinions and prior administrative findings were found to be. 20 C.F.R. §§ 404.1520c(b) and 416.920c(b). The decision is not required to articulate the determination for each and every record, however, and instead

---

[1] For example, Plaintiff cites *Simon v. Comm'r, Soc. Sec. Admin*, 7 F.4th 1094 (11th Cir. 2021) and *Richey v. Soc. Sec. Admin. Comm'r*, 2023 WL 40113525 (11th Cir. June 15, 2023) in support of her argument. Cases like *Simon* and *Richey*, where the treating physical rule was applied to reject how an ALJ considered a treating physical opinion, are no longer applicable. *See L.J.W. v. Comm'r of Soc. Soc.*, 4:24-cv-10-AGH, 2024 WL 4132699, *5, n. 3 (M.D. Ga., Sept. 10, 2024).

may discuss the source of the opinion in a single analysis. 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). The following factors will be used to consider and weigh the record: supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. §§ 404.1520c(c)(1)-(4) and 416.920c(c)(1)-(4). The most important factors are supportability and consistency, and the decision must state how these factors were considered in the disability determination. 20 C.F.R §§ 404.1520c(b)(2) and 416.920c(b)(2).

The ALJ correctly identified and applied the applicable legal standards, and the decision adequately explains the findings and conclusions. After the ALJ found that Plaintiff had medically determinable impairments which could reasonably be expected to cause her alleged symptoms (R. 18), the ALJ next had to evaluate the intensity and persistence of Plaintiff's symptoms and their effect on her ability to work, by considering the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning functional limitations and restrictions due to her symptoms. *See* 20 C.F.R. §§ 404.1529 and 416.929. The ALJ found that Plaintiff's descriptions "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record…." (R. 18).

The regulations found in 20 C.F.R. §§ 404.1520c and 416.920c, outlined above, govern the consideration of medical opinions in context of this evaluation as there is no longer a treating physician rule or deference. Additionally, "[i]f the ALJ discredits subjective testimony, [she] must articulate explicit and adequate reasons for doing so."

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). The post-March 27, 2017 regulations do not change the requirement that the ALJ must explain the factors considered with particularity. Otherwise, "'…it [would be] impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.' [When] the ALJ fails 'to state with at least some measure of clarity the grounds for his decision,' [the Court] will decline to affirm 'simply because some rational might have supported the ALJ's conclusion.'" *Winschel*, 631 F.2d at 1179 (citations omitted).

The ALJ found that Plaintiff's depression, anxiety, and autism were severe conditions. (R. 13). He acknowledged the records for Plaintiff's physical and mental health treatment, including records of Plaintiff's subjective complaints and symptoms and Ms. Thompson's clinical notes and opinions. (R. 14-20). The ALJ fairly summarized Plaintiff's treatment with Ms. Thompson, especially considering there is no requirement for the ALJ to discuss individual visits. (*Id.*) The ALJ did not ignore Plaintiff's symptoms and Ms. Thompson's observations of Plaintiff. In fact, the decision shows thoughtful examination and consideration of the record as a whole. *See Vergara v. Comm'r of Soc. Sec.* 2023 WL 5814433, *3 (11th Cir., 2023) (recognizing that the ALJ adequately explained his treatment of the medical opinion before explaining that the question before the Court is whether substantial evidence supports the ALJ's decision and not a particular medical opinion).

The ALJ considered all the opinion evidence, including Ms. Thompson's letter and questionnaire. (R. 19-20). The ALJ found Ms. Thompson's opinions to be "extreme and not persuasive for extreme or marked limitations [because the] opinions are inconsistent

13

with treatment notes, which indicate improvement with medication and counseling, as well as performance of a wide range of daily activities." (R. 20). To counter this finding, Plaintiff highlights the many visits where Ms. Thompson labeled Plaintiff's symptoms as "vacillating," compared to the fewer visits where Plaintiff's symptoms were "decreased." (Doc. 13, p. 12). Plaintiff further argues that the ALJ failed to show how the record contradicts Ms. Thompson's description of Plaintiff's symptoms, such that Plaintiff had improved with medication and therapy. (*Id.*) Plaintiff argues that a few occasional notes about being stable on medication and other generalized statements do not adequately account for how most mental health symptoms fluctuate and affect one's ability to work such that Ms. Thompson's opinion should be rejected. (*Id.*, p. 10-11).

This argument overlooks the ALJ's discussion of the record and the applicable standards in this case. The ALJ did not ignore Plaintiff's symptoms and allegations, but simply found that she was not as limited as she alleged and that Ms. Thompson's severe limitations were not supported. The ALJ credited Plaintiff's condition by finding that she is not able to work public facing jobs due to her limitations and also limiting her to simple routine work. (R. 18).   The ALJ thoroughly discussed Plaintiff's work history and Plaintiff's complaints during her sessions with Ms. Thompson, but he was also entitled to point to other portions of the record, such as Plaintiff's travel, her relationship with her boyfriend, activities caring for her father, and babysitting her boyfriend's son, as reasons to discount her subjective symptoms in the context of the entire record. (R. 14-20).

Although Plaintiff may have interpreted, credited, or discounted these portions of the record differently, the ALJ's interpretation of the record, including his evaluation of

14

Ms. Thompon's opinion, is supported by substantial evidence. The ALJ clearly articulated an analysis of the objective treatment record sufficient to support of the decision and to discount Plaintiff's subjective statements of severity. *See Brown v. Comm'r of Soc. Sec.*, 677 F. App'x 529, 531-532 (11th Cir. 2017). Ultimately, Plaintiff is asking the Court to reweigh the evidence to find in her favor, which the Court cannot do. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021) (citing *Winschel*, 631 F.3d at 1178). The ALJ found that the subjective symptoms were not consistent with the objective medical record and opinion evidence. The decision is well articulated, and it shows the ALJ considered the record as a whole. There is no error with the manner in which the ALJ considered Plaintiff's mental health issues and Ms. Thompson's opinion. Substantial evidence supports the decision.

Based on the foregoing, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, this 12th day of September, 2025.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge